IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. <u>13-cv-01977</u>

LIMEADETECH, LLC, a Colorado Limited Liability Company,

    Plaintiff,

v.

LIMEADE, INC., a Washington Corporation,

    Defendant.

---

**COMPLAINT FOR DECLARATORY JUDGMENT WITH JURY DEMAND**

---

Plaintiff LimeadeTech, LLC ("LT"), by and through its attorneys, for its Complaint for Declaratory Judgment against Defendant Limeade, Inc. ("Defendant"), alleges as follows:

## I. <u>PARTIES</u>

1.    LT is a limited liability company organized under the laws of Colorado with a principal place of business at 5603 Arapahoe Avenue, Suite 7, Boulder, Colorado 80303.

2.    Upon information and belief, Defendant is a corporation organized under the laws of the State of Washington, and has its principal place of business at 10777 Main Street, Suite 100, Bellevue, Washington 98004.

## II. <u>JURISDICTION AND VENUE</u>

3.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a), and Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

4.     Defendant has consented to personal jurisdiction because Defendant conducts regular business within this judicial district, the activities giving rise to LT's claims occurred in this judicial district, and LT has been damaged in this judicial district by Defendant's conduct.

5.     Venue is proper in this judicial district at least under 28 U.S.C. §§ 1391(b)(2) and (c)(2), as a substantial part of the events giving rise to LT's claims occurred in this judicial district.

### III.  GENERAL ALLEGATIONS

#### A.    LT's Innovation and Use of "LIMEADE"

6.     LT is a Boulder, Colorado-based start-up company, founded in November 2012, specializing in the design and manufacture of cutting-edge external batteries for charging mobile devices, including smartphones, tablets, and MP3 players.

7.     LT chose to market its initial battery pack charger under the name "LIMEADE BLAST" to connote both "juice" (*i.e.*, power) for a mobile device, as well as the speed at which a device can be maximally charged (*i.e.*, full blast).

8.     LT obtained its initial funding for its Limeade Blast project through Kickstarter® in May 2013.  The Limeade Blast project garnered overwhelming support on Kickstarter®.  A true and correct copy of the Kickstarter® LT page is attached as Exhibit 1 and incorporated herein by reference.

9.     LT's innovation in the realm of external battery devices also received significant press coverage before and after its launch on Kickstarter®, eventually garnering international attention.  True and correct copies of various on-line U.S. and India articles are attached as Exhibit 2 and incorporated herein by reference.

10. Since its launch in May 2013, LT has marketed and offered for sale external batteries and battery accessories under both the "LIMEADE BLAST" and "LIMEADE" marks. A true and correct copy of the Amazon LT product page is attached as Exhibit 3 and incorporated herein by reference.

**B.     Defendant's Services and Use of "LIMEADE"**

11. Upon information and belief, Defendant is a company that primarily provides corporate wellness programs to companies through the use of holistic well-being and personality typing and assessment programs. A true and correct copy of Defendant's LinkedIn page, describing its mission, is attached as Exhibit 4 and incorporated herein by reference.

12. Upon information and belief, Defendant's clients are employers that contact Defendant for assistance with the provision of wellness services for their employees. A true and correct copy of Defendant's client page is attached as Exhibit 5 and incorporated herein by reference.

13. Upon information and belief, Defendant is the owner of U.S. Registration Nos. 3,396,405 and 3,396,427 for the standard word and stylized design for "LIMEADE", both covering the services of "providing <u>online</u> holistic well-being and personality typing and assessment; providing <u>online</u> information for self-help in personal development, namely, providing information and tools for use in setting, tracking and evaluating personal development goals." (Emphasis added.) True and correct copies of the Registration Certificates are attached as Exhibit 6 and incorporated herein by reference.

14. Upon information and belief, Defendant on May 28, 2013—after LT's launch of its products on Kickstarter®—filed a new U.S. trademark application for "LIMEADE" which

seeks to extend Defendant's initial claim of rights in online platform services to further cover software, namely: "computer application software for recording fitness activity, namely, software for synchronizing activity data between battery powered fitness devices and enterprise wellness platforms; computer software for application and database integration; computer software platforms for synchronizing activity data between battery powered fitness devices and enterprise wellness platforms; software for synchronizing activity data between battery powered fitness devices and enterprise wellness platforms". A true and correct copy of the U.S. Patent and Trademark Office status printout for U.S. Application No. 85/944,379 ("Software Application") is attached as Exhibit 7 and incorporated herein by reference.

15. In the Software Application, Defendant claimed actual use of the mark in commerce, and submitted as a specimen of use a screenshot of Defendant's website, which "allow[s] user[s] to connect with listed databases to synchronize activity data." True and correct copies of Defendant's TEAS Plus Application, along with the filed specimen, are attached as Exhibit 8 and incorporated herein by reference. However, nowhere on the specimen, nor on the description thereof, does Defendant demonstrate use of the applied-for mark on software. *See id.*

16. On June 4, 2013, Defendant filed a petition to make the subject of the Software Application "special" for expedited processing on the basis that Defendant believed "the threat of litigation surrounding the mark constitutes special circumstances justifying the advancement of its application out of normal order of examination." Defendant further cited "'actual or threatened infringement' as a common reason for granting Petitions to Make Special." A true and correct copy of the petition is attached as Exhibit 9 and incorporated herein by reference. Upon information and belief, LT's use of the mark "LIMEADE" in connection with external

battery charging devices and accessories for battery products is the basis for Defendant's Petition to Make Special and it is Defendant's position that LT's actions constitute infringement of Defendant's trademark rights.

17. Upon information and belief, Defendant filed the Software Application in response to learning of the unrelated activities of LT. Upon information and belief, the filing of the Software Application by Defendant is a transparent attempt to improperly expand purported trademark rights in on-line wellness platforms and related software to also include wholly unrelated battery powered devices. Upon information and belief, Defendant does not manufacture or sell battery powered devices at all, let alone in association with the mark "LIMEADE."

**C.   Dispute**

18. On June 14, 2013—two-and-a-half weeks subsequent to Defendant's filing of the Software Application—Defendant sent LT a cease and desist letter ("C&D Letter"), alleging, *inter alia*, that LT's use of "LIMEADE" in connection with LT's batteries is an infringement of Defendant's trademark rights. A true and correct copy of the C&D Letter is attached as Exhibit 10 and incorporated herein by reference.

19. In the C&D Letter, Defendant alleges that consumers will confuse and be unable to distinguish the difference between external battery chargers and on-line platforms for wellness programs and related software. In particular, Defendant asserts that because LT uses the identical mark on "<u>lithium-ion battery packs</u> that charge, among other things, battery-powered fitness devices", and because Defendant has a trademark application that covers "<u>software</u>

5

<u>products</u> for synchronizing activity data between battery powered fitness devices", that confusion as to the sources of such batteries and software is likely. (Emphasis added.) *See* Exhibit 10.

20. Defendant further alleged in the C&D Letter that LT's use of the mark on lithium-ion batteries will tarnish its goodwill and reputation:

> [L]ithium-ion batteries were the root causes of two recent commercial airline fires; are banned from being shipped to overseas addresses due to fires resulting from transport of lithium-ion batters; and have been the subject of well over 50 million recalls because the devices contained lithium-ion batteries at risk of overheating and exploding. In sum, [LT] is absconding with [Defendant's] trademarks and is embarking on a commercial venture that is fraught with peril.

*See* Exhibit 10. Defendant has not presented evidence, nor has it asserted, that it owns a "famous mark," as that term is defined within the Trademark Act Section 43(c)(2)(A), 15 U.S.C. § 1125(c)(2)(A). Ownership of a famous mark is a prerequisite to assertion of a dilution by tarnishment claim. The mark "LIMEADE" as used by Defendant is not famous.

21. On June 27, 2013, LT sent a response letter to Defendant denying any infringement of Defendant's marks. In its letter, LT further explained that software programs for use in tracking a user's fitness progress is wholly unrelated to external battery charging devices for use in charging mobile devices. A true and correct copy of the letter is attached as Exhibit 11 and incorporated herein by reference. Upon information and belief, despite receiving LT's reasoned explanation that its activities do not infringe the trademark rights of Defendant, Defendant remains adamant that LT cease all use of the "LIMEADE" mark in connection with external battery charging devices.

## IV. FIRST CLAIM FOR RELIEF
(Declaration of Non-Infringement of the Trademark "LIMEADE")

22. LT incorporates paragraphs 1-21 as though fully set forth herein.

23.     Defendant asserts that LT's use of "LIMEADE", in connection with external battery charging devices for mobile devices, infringes Defendant's trademark for "LIMEADE" in connection with its on-line wellness programs and related computer software used in connection with wellness programs.

24.     As properly analyzed, LT's use of "LIMEADE" in connection with wholly unrelated goods—*i.e.*, external battery charging devices—in no way infringes Defendant's claimed ownership of the mark "LIMEADE" covering on-line platform services for wellness programs and/or related software.

25.     Defendant has not provided sufficient evidence of use of the mark "LIMEADE" on software in accordance with the Trademark Manual of Examining Procedure § 904.03(e), and thus has not established ownership of asserted rights in the mark for software.

26.     Relevant consumers of Defendant's goods and services are employers that contact Defendant for assistance with the provision of wellness services for their employees. Upon information and belief, purchasers of Defendant's goods and services exercise deliberate and thoughtful judgment in making their purchasing decisions. Such purchasers would not expect Defendant to provide, nor confuse Defendant to be a source of, battery charging devices and battery accessories, nor would such purchasers believe that LT and its products are associated with Defendant.

27.     Defendant's software products and LT's battery charging devices and battery accessory products travel in significantly different channels of trade. Upon information and belief, Defendant's software products are only available through a member-only access website, as indicated on the specimen it submitted with its Software Application. *See* Exhibit 8. Thus,

Defendant's products are available <u>only</u> to employers, who are <u>specifically</u> in the market for corporate wellness programs. Therefore, Defendant's products travel within the corporate wellness services industry. In contrast, LT's products are offered for sale to the public at large, who are in the market for external battery charging devices for mobile devices. These goods are offered for sale without restriction by various on-line retailers of electronic devices and accessories. *See* Exhibit 3. The industries of corporate wellness services and accessories for mobile electronic devices are wholly unrelated channels of trade.

28. An actual and justiciable controversy has arisen between LT and Defendant concerning the legitimate scope of Defendant's trademark rights and alleged infringement of Defendant's rights in the mark "LIMEADE" by LT.

29. LT is entitled to judgment from this Court declaring that its use of "LIMEADE" does not infringe any legitimate trademark rights of Defendant pursuant to 28 U.S.C. § 2201.

### V. SECOND CLAIM FOR RELIEF
(Declaration of No Dilution of the Trademark "LIMEADE")

30. LT incorporates paragraphs 1-29 as though fully set forth herein.

31. Defendant asserts that LT's use of "LIMEADE", in connection with external lithium-ion batteries, will tarnish Defendant's trademark, as lithium-ion batteries have a "well-known, checkered past". *See* Exhibit 10.

32. Defendant has not claimed, nor can it successfully assert, that it owns a "famous mark". Thus, Defendant cannot assert a dilution by tarnishment claim.

33. An actual and justiciable controversy has arisen between LT and Defendant concerning alleged dilution of the mark "LIMEADE".

34.     LT is entitled to judgment from this Court declaring that the mark "LIMEADE" as used by Defendant is not famous, and that LT's use of "LIMEADE" in connection with external batteries for mobile devices does not dilute Defendant's "LIMEADE" mark pursuant to 28 U.S.C. § 2201.

## VI.  **PRAYER FOR RELIEF**

**WHEREFORE**, LT respectfully requests that the Court enter an Order for Judgment as follows:

A.      That LT does not infringe Defendant's trademark rights, if any, by the importation, exportation, manufacture, advertising, distribution, sale or use of LT's products, including, but not limited to, external battery charging devices and/or battery accessory products manufactured and sold in association with the mark "LIMEADE" alone or in combination with other terms;

B.      That Defendant, its agents, servants, officers, directors, employees, attorneys, privies, representatives, successors, assigns, and parent and subsidiary entities, and any and all persons in act of concert or participation with any of them, be temporarily, preliminarily, and permanently enjoined from threatening to assert or asserting that LT, its agents, employees, suppliers or customers, or anyone acting in concert with them, infringe or dilute any trademark rights of Defendant in the mark "LIMEADE" or otherwise unfairly compete with Defendant based upon LT's use of the mark "LIMEADE", alone or in combination with other terms, on or in association with external battery charging devices and battery accessory products;

C. That LT's use of "LIMEADE", alone or in combination with other terms, in connection with its external battery charging devices and battery accessory products does not dilute Defendant's trademark rights, if any;

D. That the mark "LIMEADE" as used by Defendant, is not famous;

E. Awarding LT its attorney's fees and costs incurred in prosecuting this action, including its expert witness fees; and

F. Awarding such other and preliminary and permanent relief to LT as the Court deems equitable and appropriate.

## VIII.  JURY DEMAND

LT demands a jury trial on all issues so triable.

Respectfully submitted,

DATED: July 24, 2013         By:   s/ Todd P. Blakely
                                   Todd P. Blakely
                                       tblakely@sheridanross.com
                                   Pamela N. Hirschman
                                       phirschman@sheridanross.com
                                   Donna P. Gonzales
                                       dgonzales@sheridanross.com
                                   SHERIDAN ROSS P.C.
                                   1560 Broadway, Suite 1200
                                   Denver, Colorado  80202-5141
                                   Telephone:    303-863-9700
                                   Facsimile:    303-863-0223
                                   Email:        litigation@sheridanross.com

                              ATTORNEYS FOR PLAINTIFF
                              LIMEADETECH, LLC